**Robert R. STOKES, Plaintiff in Error,**

v.

**STATE of Oklahoma, Defendant in Error.**

**No. A–12949.**

Court of Criminal Appeals of Oklahoma.

Sept. 28, 1960.

W. B. Ward, Jr., Ada, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., Bill Pipkin, County Atty., and Bill Biggers, Asst. County Atty., Wewoka, for defendant in error.

PER CURIAM.

Robert R. Stokes seeks an order from this Court requiring Seminole County to pay for a transcript of the testimony taken at his trial in the district court of Seminole County, where he was charged by information with "the crime of obtaining money by trick, deception, false statements, pretenses and representations, a crime commonly known as the 'Confidence Game'", and wherein he was tried before a jury and convicted, but where the punishment was left to the court who fixed the penalty at two years confinement in the State Penitentiary at McAlester.

T. H. Williams, Jr., court appointed counsel, duly filed motion for new trial, and thereafter W. B. Ward, Jr., counsel employed by petitioner, filed a supplemental motion for new trial, and on July 11, 1960 counsel and defendant-petitioner being present, the court overruled said motions and notice of appeal was given in the district court, and time granted for preparation, service and filing of casemade, and appeal bond in amount of $4,000 was fixed by the court. Thereafter petitioner filed in the district court of Seminole County application and affidavit for transcript of the evidence and casemade at the expense of the County. It was alleged that petitioner

intended in good faith to appeal his case to the Court of Criminal Appeals. It was further stated:

"The defendant further states that he has been confined in jail since his arrest on the 27th day of June, 1960, and that at the time of his arrest had no money or property and has been unable to obtain any money to pay the expenses of this case and has not been able to make a supersedeas bond to stay execution of such judgment and sentence pending and during the appeal from such judgment and sentence to the Criminal Court of Appeals of the State of Oklahoma, and that it is impossible for the defendant to pay the costs of a case-made in this case because of his poverty and that it would be impossible for counsel for defendant to make a narrative statement of the evidence from memory by which a proper record in this case for presentation of such appeal could be made."

Petitioner testified and produced as a witness the court clerk of Seminole County. Argument was heard and the trial court thereupon denied the motion. Thereafter, and on August 19, 1960 petition in error with transcript of the record (excluding the testimony) was filed in this Court, included in which was application requesting this Court to reverse the order of the district court of Seminole County in denying transcript of the testimony at the expense of Seminole County, and directing the preparation of such transcript without cost to the petitioner.

On September 7, 1960 said application came on for hearing, petitioner and counsel being present, and the County Attorney and Assistant County Attorney of Seminole also being present. There was admitted in evidence a transcript of the evidence produced by petitioner at hearing before the trial court on August 1, 1960, certified by the court reporter. Argument was heard and the Court took the case under advisement.

The transcript of the testimony shows that on July 20, 1960 appeal bond in the amount of $4,000 was filed, being signed by Rex Stokes, father of the defendant, and by Cecil R. Crawford; but it appears that there are other charges pending against petitioner and that he is still confined in the county jail at Wewoka. He was free for about six months, but these bonds were cancelled when appeal bond was filed.

The record shows that defendant employed four different lawyers, but it is not clear whether he ever paid a fee, except that present counsel disclaims having been paid. Petitioner's father, with whom petitioner lived in Seminole County, was shown to have had steady employment for many years, and he had friends with money. But petitioner says that a business he operated in Texas became bankrupt. He claims that he has no funds whatever, and no property that might be converted into money. It will be noted that in the application for record, quoted heretofore, petitioner did not categorically state that he had no relatives or friends from whom he could get money to pay for the record. It is not alleged that his trial counsel could not state the evidence at trial from memory in narrative form. Obviously, it would be impossible for new counsel not present at trial to do so.

The sole question is: Did the trial court abuse his discretion in refusal to order casemade at the expense of Seminole County? Only if we can say from the record that there was an abuse of discretion, are we authorized to reverse the trial court.

What yardstick do we have for solving the question?

In the recent case of Application of Mennelli for writ of mandamus (Okl. Cr., 332 P.2d 38, 39) this Court said:

"Petition for mandamus for casemade forma pauperis must allege that petitioner is without funds to perfect said appeal or provide security therefor, and it must affirmatively appear

that he has no property of any kind and that he has no relatives willing to assist him or that his attorney who represented him is unable to make up a transcript from memory.

"The matter of granting or refusing casemade forma pauperis is a matter within the sound judicial discretion of the trial court and his discretion will not be reviewed unless it appears that it was arbitrarily used or abused."

See 20 O.S.1951 § 111; 22 O.S.1951 § 1061.

The Court quotes from Judge Furman in the case of Harris v. State, 10 Okl. Cr. 417, 137 P. 365, 369, 139 P. 846, as follows:

"Upon the authority of Jeffries v. State, 9 Okl.Cr. 373, 132 P. 823, the action of the trial court must be sustained. For in the Jeffries case it was expressly stated that, where a defendant had been able to employ lawyers to defend him, if for any reason the stenographer's notes could not be obtained, that then it was the duty of such lawyers to use their best exertion to make up a casemade from memory, and, if they failed to do so, the defendant would be held responsible for this neglect of duty on their part. Also, see Dobbs v. State, 5 Okl.Cr. 475, 114 Pac. 358, 115 Pac. 370. The writer of this opinion practiced law many years in Texas before court stenographers were known in that state, and when, under the law, the evidence had to be written out as a matter of memory by the attorneys and filed in court within ten days from the adjournment of the term of court. The writer never had the least difficulty in preparing his statements of the evidence in his cases, and he knows from personal experience that it can easily be done. In fact he seriously doubts if the employment of court stenographers is at all necessary either in the administration of justice or to the development of lawyers. It has a tendency to breed carelessness on their part; but, be this as it may, the trial court has a large discretion as to when to order the stenographer's notes to be extended without expense to a defendant, and this discretion will not be reviewed, unless it clearly appears from the record that it was arbitrarily used or abused."

■ See also Gaines v. State, 61 Okl. Cr. 8, 65 P.2d 422, where in the body of the opinion Judge Barefoot said:

"Trial courts should, and will, exercise their sound discretion in protecting the rights of defendants who have been convicted and who desire to appeal their cases to the higher courts. No fixed rule ought to be established. Where extreme penalties have been inflicted, or where the court deems it proper that the questions involved are such that should be passed upon by the higher courts, or whether or not the appeal is frivolous, will all be taken into consideration by the court in the exercise of its sound discretion, to the end that the rights of the defendant may be properly safeguarded, and also the rights of the county protected from the expense of unnecessary appeals. The mere filing of an affidavit by the defendant, or his statement that he is unable to pay the expense of the appeal, should not alone determine the right of the county to furnish the transcript of the record."

■ We are unable to say from the record that the trial court abused its discretion in refusing to order the record for appeal at the expense of Seminole County, and therefore are not justified in setting aside the order of the court here complained of.

NIX, J., not participating.